Michael W. Stocker (179083)
Reed R. Kathrein (139304)
Danielle Smith (291237)
Kristen McCulloch (177558)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
mikes@hbsslaw.com
reed@hbsslaw.com
kristenm@hbsslaw.com
danielles@hbsslaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID INFUSO, Individually and On Behalf Of All Other Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC., JOSEPH M. HOGAN, and JOHN F. MORICI,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

**Page**

I.   NATURE OF THE ACTION ............................................................................1

II.  JURISDICTION AND VENUE .....................................................................3

III. PARTIES ........................................................................................................3

IV.  SUBSTANTIVE ALLEGATIONS ...............................................................4

    A.   Background ...........................................................................................4

    B.   Materially False and Misleading Statements And Ommissions During the Class Period ...................................................................................................5

V.   PLAINTIFF'S CLASS ACTION ALLEGATIONS ........................................10

VI.  NO SAFE HARBOR ......................................................................................12

COUNT I VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 FOR MATERIAL FALSE STATEMENTS AND OMISSIONS AGAINST ALL DEFENDANTS ...................................................................................................................12

COUNT II VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT AGAINST DEFENDANTS HOGAN AND MORICI ......................................................................14

PRAYER FOR RELIEF ...............................................................................................15

DEMAND FOR TRIAL BY JURY ..............................................................................15

David Infuso ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Align Technology, Inc. ("Align" or the "Company"), analysts' reports and advisories about the Company, and other public information.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or sold securities of Align between April 25, 2018 and October 24, 2018, both dates inclusive (the "Class Period") and suffered damages as a result of the statements and ommissions alleged herein. Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.    Align Technology, Inc is a global medical device company engaged in the design, manufacture and marketing of brand name Invisalign® clear aligners and iTero® intraoral scanners and services for orthodontics, restorative and aesthetic dentistry.  The Company's products are intended primarily for the treatment of misaligned teeth.

3.    Founded in 1997, Align is headquartered in San Jose, California, and its stock trades on the NASDAQ Global Select market under the ticker symbol "ALGN."

4.    The Company has two operating segments:  (1) Clear Aligner and (2) Scanners and Services ("Scanner").  For the year ended December 31, 2017, the Clear Aligner net revenues represented approximately 89% of worldwide net revenues, while Scanner represented the remaining 11% of worldwide net revenues.  Align sells the vast majority of its products directly to orthodontists

COMPLAINT                                                                                                          - 1 -
Case No.:

and general practitioner dentists ("GPs"), as well as to restorative and aesthetic dentists, including prosthodontists, periodontists, and oral surgeons.  The Company's Clear Aligner operating segment includes revenues from non-Invisalign brand aligners supplied to SmileDirectClub, LLC ("SDC").

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as omitted disclosure of material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that:  (1) at the beginning of the year the Company changed its North American Advantage Customer Loyalty Program by extending the discount qualification period from quarterly to semi-annual and created additional incentive tiers which was intended to, and did, result in "higher overall discounts" for its doctor customers and substantial reduction of the average sales price (ASP); (2) in Q3 the Company initiated a new Invisalign product promotion that resulted in substantial reduction of its ASP; (3) the promotions and discounts would materially impact net income as a result of reduced profit margins; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

6.      On October 24, 2018, the Company announced its third quarter 2018 financial results and reported for the first time to investors that it changed its North American Advantage Customer Loyalty Program and its new Q3 promotion negatively reduced the Average Sales Price by $85, which more than wiped out, not just partially offset, all increases in Invisaligns average sales price ("ASP") that the Company touted throughout the year.  The same day, the Company also announced that its CMO, defendant Pascaud, would "reduce his responsibilities and transition to a part-time position."

7.      This news drove the price of Align shares down as much as $87.71, or about 30%, during intraday trading on October 25, 2018 on unusually high trading volume.  The share price continued to decline over the next two trading sessions, to close at $217.94 on October 29, 2018.

8.      As a result of Defendants' wrongful acts and omissions, and the resulting decline in the Company's stock value, Plaintiff and other Class members who purchased or sold securities of Align have suffered significant losses and damages.

## II.    JURISDICTION AND VENUE

9.    The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

11.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Align's principal executive offices are located within this Judicial District.

12.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## III.    PARTIES

13.    Plaintiff, David Infuso, as set forth in the accompanying Certification, purchased and sold Align securities during the Class Period and was damaged upon certain the revelation of the alleged corrective disclosure.

14.    Defendant Align is incorporated in Delaware, and the Company's principal executive offices are located 2820 Orchard Parkway, San Jose, California 9513. Align's common stock trades on the NASDAQ under the ticker symbol "ALGN."

15.    Defendant Joseph M. Hogan, ("Hogan") served at all relevant times as the Company's President and Chief Executive Officer ("CEO").

16.    Defendant John F. Morici ("Morici") served at all relevant times as the Company's Senior Vice President, Global Finance and Chief Financial Officer ("CFO").

17.    Defendants Hogan and Morici, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's

1   reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and

2   had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of

3   their positions and access to material non-public information available to them, the Individual

4   Defendants knew that the adverse facts specified herein had not been disclosed to, and were being

5   concealed from, the public, and that the positive representations which were being made were then

6   materially false and/or misleading.  The Individual Defendants are, therefore, liable for the false

7   statements pleaded herein.

8   **IV.    SUBSTANTIVE ALLEGATIONS**

9   **A.    Background**

10   18.    Align Technology, Inc is a global medical device company engaged in the design,

11   manufacture and marketing of brand name Invisalign® clear aligners and iTero® intraoral scanners

12   and services for orthodontics, restorative and aesthetic dentistry.  The Company's products are

13   intended primarily for the treatment of misaligned (i.e., crooked) teeth.

14   19.    Founded in 1997, Align is headquartered in San Jose, California, and its stock trades

15   on the NASDAQ Global Select market under the ticker symbol "ALGN."

16   20.    The Company has two operating segments:  (1) Clear Aligner and (2) Scanners and

17   Services ("Scanner").  For the year ended December 31, 2017, the Clear Aligner net revenues

18   represent approximately 89% of worldwide net revenues, while Scanner represent the remaining

19   11% of worldwide net revenues.  Align sells the vast majority of its products directly to orthodontists

20   and general practitioner dentists ("GPs"), as well as to restorative and aesthetic dentists, including

21   prosthodontists, periodontists, and oral surgeons.  The Company's Clear Aligner operating segment

22   includes revenues from non-Invisalign brand aligners supplied to SmileDirectClub, LLC ("SDC").

23   21.    Defendant Hogan has served as Align's President and CEO and as a member of the

24   Company's Board of Directors since June 2015.

25   22.    Defendant Morici has served as Align's CFO and Senior Vice President, Global

26   Finance since June 2016.

27

28

COMPLAINT                                                                                              - 4 -
Case No.:

**B.      Materially False and Misleading Statements And Ommissions During the Class Period**

23.      The Class Period begins on April 25, 2018, when Defendants issued a press release announcing Align's 2018 first quarter ("Q1") financial results, which stated in part:

- Q1 revenues up 40.8% year-over-year to a record $436.9 million, and diluted EPS of $1.17
- Q1 operating income up 59.2% year-over-year to $98.2 million or operating margin of 22.5%
- Q1 total Invisalign case shipments up 30.8% year-over-year to 272.2 thousand
- Q1 Invisalign cases for teenage patients up 40.9% year-over-year to 69.1 thousand
- Q1 scanner and services revenues up 84.0% year-over-year to $51.4 million

SAN JOSE, Calif., April 25, 2018 – Align Technology, Inc. (Nasdaq: ALGN) today reported financial results for the first quarter ended March 31, 2018. Invisalign case shipments in the first quarter of 2018 (Q1'18) were 272.2 thousand, up 30.8% year-over-year. Americas and International region case shipments were up year-over-year 24.0% and 43.4%, respectively. Beginning Q1'18, Americas region includes North America and LATAM and the International region includes EMEA and APAC. Q1'18 Invisalign cases for teenage patients were 69.1 thousand, up 40.9% year-over-year. Q1'18 revenues were $436.9 million, up 40.8% year-over-year with Q1'18 operating income $98.2 million, up 59.2% year-over-year resulting in an operating margin of 22.5%. Net profit was $95.9 million, or $1.17 per diluted share, up $0.32 over the prior year.

Commenting on Align's Q1 2018 results, Align Technology President and CEO Joe Hogan said, "I'm pleased to report better than expected first quarter results and a strong start to the year for Align, with revenues, volumes and EPS above our guidance. Record Q1 revenues were up 41% year-over-year reflecting continued strong Invisalign volume across all geographies and customer channels, as well as iTero scanner sales which were up 84% year-overyear. Q1 Invisalign volume growth of 31% year-over-year was driven by increased d utilization including strong teen case growth globally, and expansion of our customer base, which included over 4,200 new Invisalign-trained doctors worldwide."

24.      During the earning teleconference call held on Aprril 25, 2018, Defendant Morici stated, among other things, that:

Now, for our Q1 financial results. **Total company revenue for the first quarter was a record $436.9 million, up 3.7% from the prior quarter and up 40.8% from the corresponding quarter a year ago**. Year-over-year revenue growth includes a five point benefit from favorable foreign exchange. Clear aligner revenue of $385.5 million was up 5.8% sequentially **on higher than expected volume**.

Year-over-year clear aligner revenue growth of 36.5% reflected strong Invisalign shipment growth across all customer channels and geographies and **increased Invisalign ASPs. Q1 Invisalign ASPs were up sequentially approximately $5 from Q4 to $1,310**, reflecting favorable foreign exchange and product mix, partially **offset by sales promotions and revenue deferrals**. On a year-over-year basis, **Q1 Invisalign ASPs were up approximately $40**, reflecting favorable foreign exchange, price increases and product mix partially **offset by sales promotions** and deferrals related to additional aligners.

For the first quarter, total **Invisalign shipments** of 272,200 cases were **up 6.7% sequentially and up 30.8% year-over-year**, driven by growth across all regions. For Americas' Orthodontists, Q1 Invisalign case volume was up 8.5% sequentially and up 27% year-over-year. For Americas' GP Dentists, Invisalign case volume was up 5.1% sequentially and up 19.6% year-over-year. For international doctors, Invisalign case volume was up 6.2% sequentially and up 43.4% year-over-year.

25.    On July 25, 2018, Align issued a press release to announce financial results for the second quarter ("Q2") 2018, which stated in part:

- Q2 revenues up 37.5% year-over-year to a record $490.3 million, and diluted EPS of $1.30
- Q2 operating income up 46.8% year-over-year to $122.7 million, operating margin of 25.0%
- Q2 total Invisalign case shipments up 30.5% year-over-year to 302.7 thousand
- Q2 Invisalign cases for teenage patients up 42.1% year-over-year to 78.4 thousand
- Q2 iTero scanner and services revenues up 60.9% year-over-year to $57.0 million

Align Technology, Inc. (Nasdaq:ALGN) today reported financial results for the second quarter ended June 30, 2018. Invisalign case shipments in the second quarter of 2018 (Q2'18) were 302.7 thousand, up 30.5% year-overyear. Americas and International region case shipments were up year-over-year 22.2% and 45.4%, respectively. Q2'18 Invisalign cases for teenage patients were 78.4 thousand, up 42.1% year-over-year. Q2'18 revenues were $490.3 million, up 37.5% year-over-year and Q2'18 operating income was $122.7 million, up 46.8% year-over-year resulting in an operating margin of 25.0%. Net profit was $106.1 million, or $1.30 per diluted share, up $0.45 year-over-year.

Commenting on Align's Q2 2018 results, Align Technology President and CEO Joe Hogan said, "I'm pleased to report another better than expected quarter for Align. Our second quarter results reflect strong growth across our customer channels with record volume in all regions and in almost every country market. Year-over-year revenue growth of 37.5% was driven by continued momentum from Invisalign doctors and increased adoption of Invisalign treatment for teenage patients which grew 42.1%. Q2 Invisalign volume growth of 30.5% year-over-year

reflects increased utilization and expansion of our customer base, which was over 50,000 for the first time and included more than 5,000 new Invisalign-trained doctors.  We also saw momentum from the iTero scanner and services business which includes the continued rollout of iTero scanners across Heartland Dental's installed base, as well as the first iTero scanner shipments to China."

26.   During the conference call held the same day that the Company issued its Q2 results, Morici stated, in part:

Due to Invisalign **ASPs were up sequentially approximately $5 from Q1 to $1,315**, reflecting increased secondary revenue and favorable price mix, partially offset by unfavorable FX and sales promotions. **On a year-over-year basis, Q2 Invisalign ASPs were up approximately $30 reflecting favorable FX**, price increases and product mix, **partially offset by sales promotions and deferrals related to additional liners**.  For the second quarter, total Invisalign shipments of 302,700 [ph] cases were up 11.2% sequentially, and up 30.5% year-over-year, driven by growth across all regions.

**For Americas orthodontists, Q2 Invisalign case volume was up 9% sequentially and up 25% year-over-year**.  For Americas GP dentists, Invisalign case volume was up 8.6% sequentially and up 18.2% year-over-year.  For international doctors, Invisalign case volume was up 14.9% sequentially and up 45.4% year-over-year.

27.   At the end of the Class Period, on October 24, 2018, Defendants issued a press release to announce Align's third quarter (Q3) financial results, which stated in part:

- Q3 revenues up 31.2% year-over-year to a record $505.3 million, and diluted EPS of $1.24
- Q3 operating income up 26.8% year-over-year to $125.2 million, operating margin of 24.8%
- Q3 total Invisalign case shipments up 35.3% year-over-year to 319.3 thousand
- Q3 Invisalign cases for teenage patients up 41.1% year-over-year to 98.5 thousand
- Q3 iTero scanner and services revenues up 79.1% year-over-year to $78.2 million

Align Technology, Inc. (Nasdaq: ALGN) today reported financial results for the third quarter ended September 30, 2018.  Invisalign case shipments in the third quarter of 2018 (Q3'18) were 319.3 thousand, up 35.3% year-over-year.  Americas and International region case shipments were up year-over-year 29.1% and 45.6%, respectively. Q3'18 Invisalign cases for teenage patients were 98.5 thousand, up 41.1% year-over-year.  Q3'18 revenues were $505.3 million, up 31.2% year-over-year and Q3'18 operating income was $125.2 million, up 26.8% year-over-year resulting in an operating margin of 24.8%. Net profit was $100.9 million, or $1.24 per diluted share, up $0.23 year-over-year.

Commenting on Align's Q3 2018 results, Align Technology President and CEO Joe Hogan said, "I'm pleased to report third quarter results with revenue and earnings above our outlook driven by higher than expected Invisalign volume – offset somewhat by lower ASPs and foreign exchange.  We also had another record quarter for the iTero scanner business with revenues up 79.1% year-over-year.  Q3 Invisalign volume increased 5.5% sequentially and up 35.3% year-over-year reflecting strength across regions and customer channels, as well as strong growth from both teen and adult patients.  From a product perspective, we saw strength across the Invisalign portfolio with growth from both comprehensive and noncomprehensive products, reflecting an acceleration in the non-comprehensive category related to expansion of our product portfolio, as well as new sales programs and promotions intended to increase adoption and utilization.  We also saw continued strength from international regions, especially Asia Pacific, which was our 2nd largest region after the Americas in Q3."

28.    Following the press release announcing of Align's 2018 third quarter (Q3) financial results, also on October 24, 2018, Defendants held a held an earning teleconference call, during which Defendant Morici stated in part:

Now for our Q3 financial results.  Total revenue for the third quarter was $505.3 million, up 3.1% from the prior quarter and up 31.2% from the corresponding quarter a year ago.  Year-over-year revenue growth was favorable in all regions.  **Clear aligner revenue** of $421.1 million was **down** 1.4% sequentially, **driven by lower ASPs as a result of higher-than-expected discounts** and unfavorable foreign exchange, partially offset by increased volume.

Year-over-year clear aligner revenue growth of 25% reflected strong Invisalign shipment growth across all customer channels and geographies, and was partially **offset by lower ASPs**.  As Joe mentioned earlier in his remarks, Q3 Invisalign ASPs were down sequentially and year-over-year due to a combination of promotional programs, unfavorable foreign exchange and product mix, partially offset by price increases across all regions.

**In Q3, we offered a new product promotions** designed to increase adoption of Invisalign treatment and we saw much higher-than-expected uptake on some of these promotions.  In addition, **at the beginning of the year, we created a more robust North America Advantage customer loyalty program**, which has been very favorably received by our doctors.

The **new Advantage Program** changed to a semi-annual discount qualification period instead of a quarterly one, with additional tiers that provide doctors with more incentive to move up the tiers by increasing their Invisalign case volume.  **As a result**, more doctors are moving up in tiers and achieving **higher overall discounts than they were under the prior program**.

Emphasis added.

COMPLAINT                                                                                                    - 8 -
Case No.:

29.     Defendants at no point prior to the October 24, 2018 Q3 earnings call, which is nearly a month into the fourth quarter (Q4) and with just over two months remaining in the full-year, informed investors that "at the beginning of the year" the Company changed its Advantage customer loyalty program or that the Company "offered a new product promotions" in Q3 that would result higher overall discounts and a substantial reduction of the average sales price (ASP).

30.     The October 24, 2018 announcement that the North American North American Advantage Customer Loyalty Program and its new Q3 promotion negatively reduced the Average Sales Price **by $85** revealed for the first time that the promotions and discount more than wiped out – not just "partially offset" – all increases in Invisaligns average sales price ("ASP") that the Company routinely touted throughout the year.

31.     Defendants' statements throughout the Class Period were materially false and misleading when made because Defendants failed to disclose to investors that:  (1) at the beginning of the year the Company changed its North American Advantage Customer Loyalty Program by extending the discount qualification period from quarterly to semi-annual and created additional incentive tiers which resulted in "higher overall discounts" for its customers; (2) in Q3 the Company initiated a new Invisalign product promotion that resulted in substantial reduction of the average sales price (ASP); (3) the promotions and discounts would materially impact net income as a result of reduced profit margins; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

32.     Defendants' conduct artificially drove the price of Align shares to a Class Period high of $392.98.

33.     After the truth was revealed October 24, 2018, the price of Align shares dropped as much as $87.71, or about 30%, during intraday trading on October 25, 2018 on unusually high trading volume.  The share price continued to decline over the next two trading sessions, to close at $217.94 on October 29, 2018.

## V.     PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or sold Align securities during the Class Period (the "Class") and were damaged by Defendants' statements and/or omissions as alleged herein.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Align securities were actively traded on the NASDAQ and other exchanges.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Align or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

COMPLAINT                                                                                                    - 10 -
Case No.:

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Align;

- whether Defendants caused Align to issue false and misleading statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Align securities during the Class Period were artificially inflated or artificially depressed because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

40.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Align securities are traded in efficient markets;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

- the Company's securities traded on the NASDAQ and other exchanges, and the Company was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Align securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.      Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.      Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## VI.    NO SAFE HARBOR

43.      The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Align who knew that those statements were false when made.

## COUNT I

### VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 FOR MATERIAL FALSE STATEMENTS AND OMISSIONS AGAINST ALL DEFENDANTS

44.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.      This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.      During the Class Period, Defendants directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to

COMPLAINT                                                                                                          - 12 -
Case No.:

make the statements made, in light of the circumstances under which they were made, not

misleading.

47.    Defendants carried out a plan, scheme and course of conduct which was intended to

and did (i) deceive Plaintiff and other investors, as alleged herein; and (ii) cause Plaintiff and other

investors to purchase or sell Align securities at artificially high prices.

48.    In furtherance of their plan, scheme and course of conduct, Defendants, and each of

them, took the actions set forth herein.

49.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue

statements of material fact and/or omitted to state material facts necessary to make the statements not

misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud

and deceipt upon the purchasers and sellers of Align securities in violation of Section 10(b) of the

Exchange Act and Rule 10b-5.

50.    Defendants, individually and in concert, directly and indirectly, by the use, means or

instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Align's financial well-

being and prospects, as specified herein

51.    Defendants employed devices, schemes and artifices to defraud, while in possession

of material adverse non-public information and engaged in acts, practices, and a course of conduct as

alleged herein in an effort to assure investors of Align's value and performance and continued

substantial growth, which included the making of, or the participation in the making of untrue

statements of material facts and/or omitting to state material facts necessary in order to make the

statements made about Align and its business operations and future prospects in light of the

circumstances under which they were made, not misleading, as set forth more particularly herein,

and engaged in transactions, practices and a course of business which operated as a fraud and deceit

upon the purchasers and sellers of the Company's securities during the Class Period.

52.    Defendants had actual knowledge of the misrepresentations and omissions of material

facts above.

53.     Defendants made their material misrepresentations and/or omissions knowingly and for the purpose of concealing their true intentions.

54.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, the price of Align shares was artificially inflated thereby damaging Plaintiff and the Class.

55.     Defendants' misrepresentations and omissions caused Plaintiff's and the Class' losses. In ignorance of the true facts, and relying directly or indirectly on the false and misleading statements made by Defendants and described herein, or upon the integrity of the markets in which Align's securities trade, and/or in the absence of material adverse information that was known to Defendants, but not disclosed in public statements by Defendants during the Class Period.  Plaintiff and the Class purchased or sold Align securities in the Class Period and at the time of Defendants' misrepresentations and omissions, Plaintiff was ignorant of their falsity, and believed them to be true.

56.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the Class suffered substantial damages in connection with their respective purchases and sales of Align securities during the Class Period.

**COUNT II**

**VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT
AGAINST DEFENDANTS HOGAN AND MORICI**

58.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     During the Class Period, Defedants Hogan and Morici participated in the operation and management of Align, and conducted and participated, directly and indirectly, in the conduct of Align's business affairs.  Because of their senior positions, they knew the adverse non-public information concerning the Company's promotion and discount programs and the impact these programs would have on the Company's ASPs, financial margins and overall profitability.

COMPLAINT                                                                                                      - 14 -
Case No.:

60.     As officers and directors of a publicly owned company, Hogan and Morici each had a duty to disseminate accurate and truthful information with respect to any changes that would have a material financial effect and to promptly issued by Align materially false or misleading.

61.     Because of their position of control and authority as a senior officers, Hogan and Morici were each able to, and did, control the contents of the various reports, press releases, public filings that were disseminated in the marketplace during the Class Period.  Throughout the Class Period, Defendants Hogan and Morici each exercised power and authority to cause Align to engage in the wrongful acts complained of herein.  Hogan and Morici, therefore, were "controlling persons" of Align within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Align common stock.

62.     By reason of the above conduct, Defendants Hogan and Morici are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Align.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: December 12, 2018                    Respectfully submitted,

                                            /s/ Michael W. Stocker
                                            Michael W. Stocker (179083)
                                            Reed R. Kathrein (139304)
                                            Kristen McCulloch (177558)

COMPLAINT                                                                          - 15 -
Case No.:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Danielle Smith (291237)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Ave., Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
mikes@hbsslaw.com
reed@hbsslaw.com
kristenm@hbsslaw.com
danielles@hbsslaw.com

*Attorneys for Plaintiff*

CERTIFICATION OF DAVID INFUSO
PURSUANT TO FEDERAL SECURITIES LAW

David Infuso ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed a complaint alleging securities fraud against Align Technology, Inc. and various of its officers and directors, and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities law.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

| Acquisitions | Date Acquired | No. Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| ALGN | -------------------- | Please see attached | -------------------- |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| Sales | Date Sold | No. Shares Sold | Selling Price Per Share |
| ALGN | -------------------- | Please see attached | -------------------- |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

5.     During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws except as detailed below: _____ none _____

6.       Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiffs' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___1st___ day of ___November___, 2018.




By:       _____
          (Signature of Representative Plaintiff)

**David Infuso - Align Technology, Inc. (ALGN)**
**Proposed Class Period 02/08/18 - 10/25/18**

| PURCHASES | | | | | SALES | | | |
|---|---|---|---|---|---|---|---|---|
| MERRILL EDGE ACCOUNT | Date | Shares | Share Price | | MERRILL EDGE ACCOUNT | Date | Shares | Share Price |
| Buy to Cover Shorts | 07/27/18 | 109 | $355.0500 | | Sell Shorts | 06/12/18 | 225 | $353.3000 |
| Buy to Cover Shorts | 07/27/18 | 2 | $354.0300 | | Sell Shorts | 06/12/18 | 150 | $353.4200 |
| Buy to Cover Shorts | 08/03/18 | 238 | $363.2300 | | Sell Shorts | 06/13/18 | 52 | $356.0700 |
| Buy to Cover Shorts | 08/06/18 | 109 | $367.9400 | | Sell Shorts | 06/28/18 | 90 | $343.6200 |
| Buy to Cover Shorts | 08/15/18 | 105 | $354.0800 | | Sell Shorts | 07/06/18 | 9 | $349.6000 |
| Buy to Cover Shorts | 08/16/18 | 26 | $360.3300 | | Sell Shorts | 07/23/18 | 105 | $375.1800 |
| Buy to Cover Shorts | 08/22/18 | 41 | $360.4100 | | Sell Shorts | 07/30/18 | 250 | $345.8100 |
| Buy to Cover Shorts | 08/31/18 | 20 | $386.4600 | | Sell Shorts | 08/03/18 | 110 | $362.4900 |
| Buy to Cover Shorts | 08/28/18 | 85 | $380.0100 | | Sell Shorts | 08/10/18 | 125 | $368.9800 |
| Buy to Cover Shorts | 09/13/18 | 90 | $382.7200 | | Sell Shorts | 09/17/18 | 80 | $350.9300 |
| Buy to Cover Shorts | 09/27/18 | 96 | $389.4300 | | Sell Shorts | 09/05/18 | 27 | $369.2800 |
| Buy to Cover Shorts | 10/10/18 | 552 | $325.0000 | | Sell Shorts | 09/06/18 | 59 | $375.3700 |
| | 10/18/18 | 1,000 | $328.7100 | | Sell Shorts | 09/07/18 | 14 | $372.4400 |
| | 10/18/18 | 250 | $326.0200 | | Sell Shorts | 09/10/18 | 13 | $368.0100 |
| | 10/22/18 | 500 | $310.2100 | | Sell Shorts | 09/14/18 | 13 | $387.3500 |
| | 10/22/18 | 200 | $307.3500 | | Sell Shorts | 09/19/18 | 175 | $386.5000 |
| | 10/23/18 | 250 | $303.5600 | | Sell Shorts | 09/20/18 | 35 | $385.0000 |
| | 10/23/18 | 100 | $300.1700 | | Sell Shorts | 10/01/18 | 3 | $396.4500 |
| | 10/25/18 | 1,000 | $211.7700 | | Sell Shorts | 10/03/18 | 4 | $376.1700 |
| | 10/25/18 | 200 | $210.6800 | | | 10/24/18 | 20 | $230.5000 |
| VANGUARD ACCOUNTS | | | | | | 10/24/18 | 10 | $230.5200 |
| | 10/11/18 | 550 | $314.0038 | | | 10/24/18 | 20 | $230.5000 |
| | 10/15/18 | 1,250 | $319.1342 | | | 10/24/18 | 50 | $230.5000 |
| | 10/18/18 | 555 | $320.7376 | | | 10/24/18 | 3 | $230.1800 |
| | 10/18/18 | 190 | $324.2237 | | | 10/24/18 | 295 | $230.0000 |
| | 10/18/18 | 179 | $318.4723 | | | 10/24/18 | 2 | $230.0000 |
| | 10/23/18 | 71 | $297.9899 | | | 10/24/18 | 400 | $230.1800 |
| Buy to Cover Shorts | 06/20/18 | 213 | $364.2883 | | | 10/24/18 | 50 | $233.1500 |
| Buy to Cover Shorts | 07/19/18 | 398 | $373.0257 | | | 10/24/18 | 10 | $232.6700 |
| Buy to Cover Shorts | 08/07/18 | 394 | $366.3443 | | | 10/24/18 | 10 | $232.6700 |
| Buy to Cover Shorts | 08/21/18 | 18 | $355.8699 | | | 10/24/18 | 90 | $232.6700 |
| Buy to Cover Shorts | 08/28/18 | 572 | $380.6450 | | | 10/24/18 | 2 | $292.5000 |
| Buy to Cover Shorts | 09/18/18 | 144 | $385.8809 | | | 10/25/18 | 1,190 | $216.2200 |
| Buy to Cover Shorts | 09/25/18 | 166 | $392.7137 | | | 10/25/18 | 1,338 | $206.5600 |
| Buy to Cover Shorts | 10/02/18 | 42 | $379.3300 | | VANGUARD ACCOUNTS | | | |
| Buy to Cover Shorts | 10/10/18 | 716 | $321.0000 | | | 10/12/18 | 550 | $321.2500 |
| Buy to Cover Shorts | 10/10/18 | 717 | $320.5011 | | | 10/25/18 | 669 | $229.8206 |
| Buy to Cover Shorts | 10/22/18 | 20 | $313.0500 | | | 10/25/18 | 1,505 | $232.2946 |
| | | | | | Sell Shorts | 05/21/18 | 1,000 | $302.4500 |
| | | | | | Sell Shorts | 05/25/18 | 165 | $319.0500 |
| | | | | | Sell Shorts | 05/29/18 | 95 | $323.9200 |
| | | | | | Sell Shorts | 05/30/18 | 47 | $332.1000 |
| | | | | | Sell Shorts | 05/31/18 | 23 | $336.5200 |
| | | | | | Sell Shorts | 06/01/18 | 43 | $332.4900 |
| | | | | | Sell Shorts | 06/04/18 | 20 | $337.9400 |
| | | | | | Sell Shorts | 06/05/18 | 315 | $343.2100 |
| | | | | | Sell Shorts | 06/06/18 | 310 | $346.2200 |
| | | | | | Sell Shorts | 06/07/18 | 11 | $339.6400 |
| | | | | | Sell Shorts | 06/13/18 | 22 | $355.6500 |
| | | | | | Sell Shorts | 06/22/18 | 79 | $360.5500 |
| | | | | | Sell Shorts | 06/25/18 | 31 | $347.1200 |
| | | | | | Sell Shorts | 06/25/18 | 112 | $345.6219 |
| | | | | | Sell Shorts | 07/20/18 | 38 | $371.2600 |
| | | | | | Sell Shorts | 07/30/18 | 100 | $349.5500 |
| | | | | | Sell Shorts | 08/08/18 | 50 | $366.8000 |
| | | | | | Sell Shorts | 08/08/18 | 65 | $363.8800 |
| | | | | | Sell Shorts | 08/10/18 | 7 | $367.9800 |
| | | | | | Sell Shorts | 08/10/18 | 25 | $366.2500 |
| | | | | | Sell Shorts | 08/13/18 | 26 | $364.3700 |
| | | | | | Sell Shorts | 08/14/18 | 27 | $363.0000 |
| | | | | | Sell Shorts | 08/14/18 | 147 | $367.8700 |
| | | | | | Sell Shorts | 08/14/18 | 44 | $367.2700 |
| | | | | | Sell Shorts | 08/16/18 | 175 | $352.0000 |
| | | | | | Sell Shorts | 08/17/18 | 60 | $350.2300 |
| | | | | | Sell Shorts | 09/06/18 | 30 | $375.6000 |
| | | | | | Sell Shorts | 09/06/18 | 98 | $373.5500 |
| | | | | | Sell Shorts | 09/07/18 | 33 | $374.0000 |
| | | | | | Sell Shorts | 09/10/18 | 36 | $369.6100 |
| | | | | | Sell Shorts | 10/03/18 | 144 | $381.0000 |
| | | | | | Sell Shorts | 10/08/18 | 20 | $341.8100 |